UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| HARROW, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ARDIAN FRANCE SA dba ARDIAN; ) <br> ARDIAN USA LLC dba ARDIAN; ) <br> ARDIAN HOLDING SAS dba ) <br> ARDIAN; ) <br> ) <br> Defendants. ) | Civil Action No. _____ <br><br> **JURY DEMAND** |

## COMPLAINT

Plaintiff Harrow, Inc. ("Harrow") brings this Complaint against Ardian France SA, Ardian Holding SAS, and Ardian US, LLC, and alleges as follows:

### Parties

1. Harrow is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Nashville, Tennessee.

2. Ardian France SA is a French Société anonyme with its principal place of business in Paris, France.

3. Ardian Holding SAS is a French société par actions simplifiée with its principal place of business in Paris, France.

4. Ardian US, LLC is a Delaware limited liability company with its principal place of business in New York City, New York.

5. Upon information and belief, Ardian Holding SAS is the parent of Ardian France SA, and Ardian France SA is the sole member of Ardian USA, LLC.

In reality, however, the aforementioned corporate entities are alter egos of each other such that any corporate distinctions between them should be disregarded.

6. Upon information and belief, Ardian Holding SAS, Ardian France SA, and Ardian USA, LLC, during relevant times have shared and continue to share employees and corporate officers, including but not limited to Thibault Basquin, Michael Ferragamo, Vladimir Colas, and Mark Benedetti.

7. Ardian Holding SAS, Ardian France SA, and Ardian US, LLC engage in the same business enterprise, as detailed on their shared website – www.ardian.com – which states that the Ardian business has "19 offices worldwide" and does not distinguish between particular entities either when describing the business or its personnel. Indeed, any reasonable visitor to the ardian.com website would conclude that the website promotes a single business enterprise, with offices in, among other places, Paris and New York City.

8. Ardian Holding SAS, Ardian France SA, and Ardian US, LLC have shared phone lines, emails addresses, and branding.

9. Ardian Holding SAS has declared to the U.S. Patent and Trademark Office that it is using the "Ardian" trademark in the United States even though Ardian Holding SAS ostensibly has no office or physical presence in the U.S.

10. The aforementioned Ardian entities all have the same legal and compliance personnel.

11. Upon information and belief, the aforementioned entities all exert control over the daily affairs of each other through, among other things, shared committees such as the Executive Committee, Operations Committee, Sales Committee, and Millennial Committee.

12. Upon information and belief, absent piercing the corporate veil, injustice and/or fraud will result, including an inability of judgment creditors to recover assets from one or more of the Ardian entities, unjustly insulating from

liability the unlawful acts or omissions undertaken at the direction of or by actors outside the United States against U.S. residents, and potentially misleading U.S. investors and regulators as to the corporate separateness of the Ardian entities.

13. Ardian Holding SAS, Ardian France SA, and Ardian US, LLC are hereinafter referenced as "Ardian".

## Jurisdiction and Venue

14. This Court has diversity jurisdiction pursuant to 28 U.S.C. section 1332 because: (a) Harrow is a Delaware corporation headquartered in Tennessee, Ardian Holding SAS and Ardian France SA are both French corporations headquartered in France, and Ardian US, LLC's sole member is the aforementioned French entity, Ardian France SA; and (b) the case involves damages in excess of $75,000.

15. This Court has personal jurisdiction over Ardian because, as alleged below, Ardian engaged in an intentional tort – i.e., tortiously interfering with Harrow's contract – expressly aimed at Harrow in Tennessee and knowing that the intended effects would be felt by Harrow in Tennessee. Furthermore, Ardian representatives communicated with Harrow representatives in Tennessee in furtherance of their goal to tortiously interfere with Harrow's contract with a third party. Moreover, exercising jurisdiction over Ardian – a large global private equity firm that does extensive business in the U.S., including in Tennessee – would not be unreasonable and Ardian has minimum contacts in Tennessee sufficient to establish personal jurisdiction.

16. Venue in this district is proper pursuant to 28 U.S.C. section 1391 because Harrow resides in this District and has been harmed by Ardian's actions in this District.

## General Allegations

### A. Harrow Contracts with Sintetica.

17. Harrow is a pharmaceutical company that specializes in medications used to treat and/or prevent ophthalmic diseases and conditions.

18. After over a year of negotiations, in or around July 2021, Harrow entered into a written License and Supply Agreement (the "Agreement") with a Swiss pharmaceutical company, Sintetica S.A. The Agreement followed extensive negotiation, review, and drafting, including by legal counsel for both parties thereto.

19. Pursuant to the Agreement, Sintetica agreed to manufacture a particular pharmaceutical product for Harrow (now branded as IHEEZO®) in exchange for, among other things, a fixed royalty amount per unit – i.e., $X per unit.[1]

20. The Agreement contained a caveat however to the $X per unit royalty. If the default $X per unit royalty would result in Harrow making less than an expressly specified gross margin on the product, then the royalty owed to Sintetica would decrease to ensure a minimum of that specified gross margin. However, the lowest royalty that could be paid to Sintetica would be $Y per unit.

21. In other words, the Agreement specified with great precision both the ceiling ($X per unit) and the floor ($Y per unit) that could be owed to Sintetica.

22. The Agreement *did not* however require Harrow to increase the fixed royalty – i.e., raise the ceiling – if Harrow's sales price per unit (or gross margin) was higher than anticipated.

23. Indeed, the Agreement provided Harrow the sole and exclusive right to evaluate and set product pricing and expressly prohibited Sintetica from controlling or directing Harrow's product pricing.

---

[1] Harrow has used placeholders of "X" and "Y" in order to preserve the confidentiality of the specific unit prices set forth in the Agreement.

24. Following entry into the Agreement, Harrow worked tirelessly and made substantial monetary investments first to obtain FDA-approval of IHEEZO® -- i.e., the first branded ocular anesthetic approved for the U.S. ophthalmic market in nearly 14 years -- and then to prepare the product for commercialization, including actively participating in negotiations concerning the labeling of IHEEZO®.

25. Recognizing the importance of IHEEZO® to doctors and patients, in March 2023, the U.S. Department of Health and Human Services ("HHS") granted the drug "temporary pass-through reimbursement status," which is generally reserved for a select group of new and innovative medical devices and drugs.

26. Upon the launch of IHEEZO®, Harrow exercised its sole and exclusive rights under the Agreement to direct all commercial activities in the United States market for IHEEZO®, including the pricing of the product.

27. Effective April 1, 2023, after significant investment by Harrow, HHS issued IHEEZO® a product specific J-Code (J-2403), allowing for reimbursement of IHEEZO® by qualified purchasers.

28. In March of 2024, after significant investment by Harrow, HHS took action to allow IHEEZO® to be administered by qualified purchasers on Medicare beneficiaries and billed under the IHEEZO® product-specific J-Code. The result of this action was that Harrow's margin on IHEEZO® increased for the use of IHEEZO® in certain settings of care.

**B.** **Ardian Pressures Sintetica to Repudiate the Agreement and to Threaten Harrow with Frivolous Legal Claims to Try to Force Harrow to Re-Negotiate the Agreement.**

29. Ardian is one of the largest European-based private equity funds in the world. It purports to manage or advise over $170 billion in assets globally.

30. Ardian owns a substantial stake in Sintetica.

31. Despite knowing Harrow and Sintetica amended the Agreement twice – after the aforementioned coding and reimbursement successes and without concern for Harrow's increased margins – Ardian hatched a plan to attempt to force Harrow to renegotiate the Agreement.

32. According to Ardian's plan, if Harrow would not agree to renegotiate a more favorable royalty rate moving forward, then Ardian would command Sintetica to: (a) repudiate and thus anticipatorily breach the Agreement; and (b) level frivolous legal claims against Harrow for the sole purpose of coercing Harrow to enter into a new and better deal for Sintetica (the "Ardian Plan").

33. Ardian directed multiple Sintetica executives, including at least two former Sintetica Chief Executive Officers, to execute the Ardian Plan. After the Sintetica officers failed in the endeavor, they were terminated.

34. On October 21, 2024, at Ardian's direction, and through Ardian's lawyers at Sheppard Mullin, Sintetica submitted a Request for Mediation in which it estimated its damages at $140 million.

35. Sintetica and Harrow participated in a failed mediation. Following that mediation, representatives of Sintetica stated that they intended to file the same frivolous claims against Harrow in an arbitration in London. Moreover, Sintetica continued to breach the Agreement by purporting to direct or control Harrow's pricing on the product.

36. Upon information and belief, all of the aforementioned actions were undertaken by Sintetica at the direction of Ardian and for the sole purpose of Ardian interfering with the Agreement between Sintetica and Harrow. But for Ardian's direction, Sintetica would not have repudiated and thus anticipatorily breached the Agreement by leveling bad-faith claims against Harrow and by attempting to direct or control Harrow's product pricing.

37. Ardian had no belief in the merit of the claims it commanded Sintetica to bring against Harrow, but instead demanded that Sintetica make those claims in order to harass Harrow into entering into a more favorable contract with Sintetica.

38. Ardian had no belief that Sintetica had a right to direct or control Harrow's product pricing, but pressured Sintetica to assert such a right in order to harass Harrow into entering a more favorable contract with Sintetica.

39. Ardian's actions have caused damage to Harrow and have the potential to cause damage to the millions of patients who rely on (and/or could in the future rely on) the unique benefits of IHEEZO®.

## Count One

### (Tortious Interference with Contract In Violation of the Common Law and T.C.A. § 47-50-109)

40. Harrow re-alleges and incorporates herein by reference, as though set forth in full, each of the allegations set forth in the paragraphs above.

41. The Agreement is a valid legal contract between Harrow and Sintetica.

42. Ardian had knowledge of the Agreement as evidenced by the facts that Ardian is a shareholder of Sintetica and representatives of Ardian participated in communications with Harrow and Sintetica about the Agreement.

43. Ardian intended to induce Sintetica to breach the Agreement, as evidenced by the above-alleged plan by Ardian to pressure Sintetica to repudiate the Agreement and to use the leveling of frivolous claims and wildly inflated damages against Harrow to cause Harrow to enter into a new, more favorable contract with Sintetica.

44. Because of Ardian's actions, Sintetica repudiated and thus anticipatorily breached the Agreement.

45. Ardian acted with improper motive and means by causing the pursuit of bad-faith and wholly unfounded claims to be made against Harrow.

46. Ardian's interference with the contract has damaged Harrow in an amount to be proven at trial but for no less than $500,000, including by forcing Harrow to incur substantial time, expense, and burden in defending against frivolous and bad-faith legal claims and by straining Harrow's relationship with an otherwise trusted supplier. In addition, Harrow is entitled to treble damages for such tortious interference.

## Prayer For Relief

WHEREFORE, Harrow prays for relief against Ardian as follows:

1. For actual damages that are trebled under T.C.A. section 47-50-109;

2. For injunctive relief prohibiting Ardian from interfering with the Agreement and Sintetica's business relationship with Harrow;

3. For punitive damages in an amount according to proof;

4. For pre-judgment interest on all damages awarded by this Court;

5. For costs of suit incurred herein; and

6. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Harrow hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

**HOLLAND & KNIGHT, LLP**

By: /s/ Mark W. Peters
Mark W. Peters, TN Bar No. 18422
511 Union Street – Suite 2700
Nashville, TN 37219
615.850.8888
markwpeters@hklaw.com

**ELLIS GEORGE LLP**

Keith J. Wesley (pro hace vice application forthcoming)
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
(310) 274-7100
kwesley@ellisgeorge.com

9